UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AFTERMARKET AUTO PARTS ALLIANCE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BUMPER2BUMPER, INC., and BANGOR CAR CARE, INC., <br><br> Defendants. | ) ) ) ) ) ) Civil no. 1:12-cv-00258-NT ) ) ) ) ) ) ) ) |

**ORDER ON PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER**

The Plaintiff, Aftermarket Auto Parts Alliance, Inc., has filed an Amended Emergency Motion for Temporary Restraining Order (Doc. # 10) against the Defendants, Bumper2Bumper, Inc., and Bangor Car Care, Inc. In its Complaint (Doc. # 1), the Plaintiff claims that the Defendants are infringing the Plaintiff's trademark, "Bumper to Bumper" (Count I); engaging in unfair competition, false designation of origin, passing off, and false advertising (Count II); diluting the Plaintiff's famous mark (Count III); and violating the Plaintiff's rights by using the Internet domain name Bumper2Bumper.com (Count IV). The Plaintiff is seeking a temporary restraining order preventing the Defendants from continuing this allegedly wrongful conduct pending hearings on preliminary and permanent injunctive relief. For the following reasons, the Plaintiff's Amended Emergency Motion for Temporary Restraining Order is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

"Bumper to Bumper" is a registered trademark owned and licensed by the Plaintiff since 1983. There are currently more than 1,900 automotive service and parts businesses authorized to use the trademark in 27 states. There is only one such business in Maine, located in the town of Chelsea. On March 28, 2012, the Plaintiff became aware of an automotive business in Bangor, Maine, using the name Bumper2Bumper. The Plaintiff contacted Glenn Geiser, the owner of Bumper2Bumper, and demanded that he change the business's name. Geiser refused, claiming that his business was limited to vehicle sales and did not offer service. The Plaintiff was concerned about the significant number of customer complaints against Bumper2Bumper and Geiser's former business, Bangor Car Care. Geiser later notified the Plaintiff that he planned to open a second location in Lewiston, Maine, which is near the authorized "Bumper to Bumper" business in Chelsea.

After the Plaintiff filed its Complaint and Amended Emergency Motion for Temporary Restraining Order, the Defendants filed an Objection to the Plaintiff's Motion (Doc. # 18), and the Plaintiff filed a Reply (Doc. # 19). On September 12, 2012, the Court heard telephonic oral argument on the Plaintiff's Motion and invited the parties to consider whether they preferred to receive a ruling on the Motion or to proceed with an expedited evidentiary hearing on a preliminary injunction. (Doc. # 22) On September 17, 2012, the parties filed a status report indicating that they could not agree on a stipulated order resolving the Motion

because the Defendants had opened a location in Lewiston. (Doc. # 23) Pursuant to the Court's Order (Doc. # 24), the parties then briefed the issue of security under Fed. R. Civ. P. 65(c) (Docs. # 27 & 31). Having reviewed all of the parties' filings, the Court proceeds to consider the Plaintiff's Motion.

## STANDARD OF REVIEW

In evaluating a motion for a temporary restraining order, the Court examines the same four factors that apply to a motion for a preliminary injunction. *OfficeMax, Inc. v. County Qwick Print, Inc.*, 709 F. Supp. 2d 100, 106 (D. Me. 2010). The movant "must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that the injunction is in the public interest." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 9 (1st Cir. 2012) (citation omitted). "While all these factors must be weighed, the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits. . . . The importance of that inquiry is magnified in trademark cases because the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement. . . . This emphasis on likelihood of success is fully consistent with the tenet that, as a matter of public policy, trademarks should be protected against infringing uses." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006) (citations omitted).

## DISCUSSION

### I. Likelihood of Success on the Merits

In order to establish a likelihood of success on the merits, the movant "must demonstrate both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion." *Id.* at 116.

#### A. Whether the Mark Merits Protection

As to the first element, "a mark must qualify as distinctive," *id.*, and as long as the mark is registered, it is presumed to be distinctive. *Id.* at 117; see also 15 U.S.C. § 1115(a). This presumption is conclusive if the mark is incontestable pursuant to 15 U.S.C. §§ 1065 & 1115(b). According to the Plaintiff, "Bumper to Bumper" and five other similar registered marks are incontestable. Although the Defendants suggested at oral argument that they might challenge the Plaintiff on this issue, they have not briefed it. The Court concludes that, for purposes of issuing a temporary restraining order, the Plaintiff has shown that its six incontestable "Bumper to Bumper" marks merit protection.

#### B. Likelihood of Consumer Confusion

As to the second element, there are eight factors to consider in assessing the likelihood of consumer confusion: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." *Borinquen Biscuit*, 443 F.3d

at 120 (citations omitted). "A proper analysis takes cognizance of all eight factors but assigns no single factor dispositive weight." *Id.*

### 1. Factors Clearly Favoring the Plaintiff

The Court determines that, at a minimum, factors one and eight weigh heavily in the Plaintiff's favor. As to factor one, the "Bumper to Bumper" mark is identical to "Bumper2Bumper" except for the use of the numeral 2 and the spacing of the words. The Defendants argue that those differences render "Bumper2Bumper" distinct, but the Court focuses on "sight, sound, and meaning" and "the total effect of the designation, rather than a comparison of individual features . . . ." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 24 (1st Cir. 2008) (citations omitted). "Bumper to Bumper" and "Bumper2Bumper" look nearly alike and have the same sound and meaning. The total effect of "Bumper2Bumper" is similar to "Bumper to Bumper," and thus the Court concludes that the marks are similar.

As to factor eight, the strength of a mark is measured by "the length of time the mark has been used, the trademark holder's renown in the industry, the potency of the mark in the product field (as measured by the number of similar registered marks), and the trademark holder's efforts to promote and protect the mark." *Borinquen Biscuit*, 443 F.3d at 121. In this case, the Plaintiff has used its mark since 1983, licenses it to more than 1,900 businesses in 27 states, has registered several similar marks, and reports spending more than $76.7 million over 30 years to promote and protect the mark. The Defendants argue that the

mark is weak because, according to their research, well over 100 businesses in North America use a name that includes a phrase similar to "Bumper to Bumper." According to the Plaintiff's review of the Defendants' research, only 18 of those businesses may possibly be infringing the Plaintiff's mark. The remainder are the Plaintiff's licensees, are not in the same type of business, or are located in jurisdictions where the Plaintiff lacks trademark rights. The Court is unpersuaded by the Defendants' research and finds that the Plaintiff's mark is strong.

### 2. Factors Potentially Favoring the Plaintiff

Factors two through five may ultimately weigh in the Plaintiff's favor, but there is insufficient evidence to reach that conclusion at this time. As to factor two (similarity of the goods), the Plaintiff's business is automotive service and parts, while the Defendants claim that they engage only in the sale of vehicles. Although the Plaintiff's investigation of this case suggests that the Defendants may have offered automotive service, the Court declines to make such a finding before a hearing on a motion for a preliminary injunction. "Factors three (channels of trade), four (advertising), and five (classes of prospective purchasers) are often considered together because they tend to be interrelated." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 19 (1st Cir. 2004). Findings as to these factors will depend on whether automotive service and parts on the one hand and vehicle sales on the other constitute a "single line of business activity," as the Plaintiff contends (Doc. # 19 at 4), and whether the Defendants engage in both.

As to advertising, the Court notes that the Plaintiff and the Defendants all advertise online, and the Defendants' use of the domain name Bumper2Bumper.com implicates the same analysis that applied to factor one (similarity of the marks).  The parties also use newspaper, radio, and television advertising.  The Court takes judicial notice that businesses in Lewiston and Chelsea may advertise in the same newspapers and on the same radio and television stations, and that there is some overlap in media markets between the Lewiston-Chelsea and Bangor areas.  However, the Court reserves decision on factor four pending a hearing on a motion for a preliminary injunction.

### 3. Factors Favoring the Defendant

The Plaintiff admits that it lacks evidence as to factor six (actual confusion) and has no "direct knowledge" as to factor seven (the Defendants' intent in adopting their mark) (Doc. # 10 at 15).  Geiser, Bumper2Bumper's owner, avers that he did not know of the "Bumper to Bumper" mark until the Plaintiff contacted him.  At this juncture, factors six and seven appear to weigh in favor of the Defendants.

### 4. Analysis of the Factors

Having considered all eight factors relating to the likelihood of consumer confusion, the Court concludes that the Plaintiff has met its burden.  The parties' marks are similar (factor one) and the Plaintiff's mark is strong (factor eight).  The Plaintiff has presented some evidence that the parties offered similar services (factor two), engaged in the same channels of trade (factor three), and targeted the same classes of prospective purchasers (factor five).  There also appears to be

potential overlap in the parties' advertising online, in newspapers, and on radio and television (factor four). Although there is no evidence of actual confusion (factor six) and the Defendants deny an intent to infringe the Plaintiff's mark (factor seven), the balance of the factors favors the Plaintiff at this time. The Plaintiff has shown that its mark merits protection and that the Defendants' use is likely to result in consumer confusion. Therefore, the Court determines that the Plaintiff is likely to succeed on the merits.

The Defendants rely heavily on *Wild Willy's Holding Co. v. Palladino*, 463 F. Supp. 2d 65 (D. Me. 2006), in which the court denied the plaintiff's motion for a preliminary injunction. The case pitted the owner of Wild Willy's Burgers against the owners of Wild Willy's Ale Room. Although the parties' marks were similar, the plaintiff's mark was strong, and the parties' businesses were located in "close physical proximity," *id.* at 70, the court found little likelihood of confusion because the plaintiff operated a family-style restaurant while the defendants operated a bar or lounge. In the present case, the Plaintiff argues that the facts of *Wild Willy's* are distinct and that that case is not dispositive. The Court agrees that *Wild Willy's* is instructive but not controlling.

## II.   Irreparable Harm

The Court turns to the remaining elements of the test governing a motion for a temporary restraining order. When the movant has demonstrated a likelihood of success on the merits, courts have assumed the second element of irreparable harm, but the First Circuit has recently indicated that "there is a looming question"

8

whether such a presumption is valid. *See Peoples Fed. Sav. Bank*, 672 F.3d at 9 n.11. Instead of relying on that presumption, the First Circuit notes that courts must "exercise their discretion 'consistent with traditional principles of equity' . . . ." *Id*. (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394, (2006)). In the present case, the Court concludes that the Plaintiff has shown a likelihood that it will suffer irreparable harm if it does not obtain relief. The Plaintiff states that its damages from the Defendants' infringement will not be easily ascertainable because the harm consists of "lost customers, loss of goodwill, injury to reputation in the market, and source confusion." (Doc. #10 at 17) "Because injuries to goodwill and reputation are not easily quantifiable, courts often find this type of harm irreparable." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000). Particularly in light of Defendant's concession that he operates a business that is prone to customer complaints (i.e., used car sales to individuals who cannot get credit from traditional lenders), the likelihood of damage to Plaintiff's reputation is heightened.

### III. Balance of Equities and the Public Interest

The Court also finds that the balance of equities favors the Plaintiff. As the Plaintiff pointed out at oral argument, the Defendants' previous change to the name of their business, from Bangor Car Care to Bumper2Bumper, appeared not to decrease their sales. In contrast, every day on which the Defendants continue to use the name Bumper2Bumper presents another opportunity for substantial consumer confusion and injury to the Plaintiff's goodwill and reputation. As to the

final element of the public interest, substantial consumer confusion is not in the public interest. *Mercado-Salinas v. Bart Enters. Int'l, Ltd.*, 671 F.3d 12, 24 (1st Cir. 2011). The Plaintiff has established all four elements needed to obtain a temporary restraining order.

### IV.   Security

Fed. R. Civ. P. 65(c) provides in relevant part that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In light of the costs that the Defendants will need to incur in order to change the name of their business, the Court finds it appropriate to set the amount of security at $15,000.

### CONCLUSION

The Plaintiff's Amended Emergency Motion for Temporary Restraining Order (Doc. # 10) is **GRANTED**. The Temporary Restraining Order shall issue upon the Plaintiff's posting of bond in the amount of $15,000. The Order will provide that the Defendants and their agents, representatives, servants, employees, and all those acting in concert or participation with them shall not (1) use the Plaintiff's mark or "Bumper2Bumper" or any variation or permutation of "Bumper to Bumper," including a misspelling or alternative spelling, in connection with the promotion, marketing, advertising, public relations, or operation of the Defendants' business; (2) dilute, blur, pass off, or falsely designate the origin of the Plaintiff's mark; and

(3) perform any act likely to injure the Plaintiff's goodwill and reputation or induce the belief that the Defendants' business, services, or products are in any way connected with, sponsored, affiliated, licensed, or endorsed by the Plaintiff. The Court will schedule a preliminary injunction hearing forthwith.

SO ORDERED.

/s/ Nancy Torresen<br>
NANCY TORRESEN<br>
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2012.